David B. Shemano (State Bar No. 176020)
*dshemano@pwkllp.com*
Monsi Morales (State Bar No. 235520)
*mmorales@pwkllp.com*
PEITZMAN, WEG & KEMPINSKY LLP
10100 Santa Monica Boulevard, Suite 1450
Los Angeles, CA  90067
Telephone: (310) 552-3100
Facsimile:  (310) 552-3101

Proposed Counsel for Debtor and Debtor in Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SAN FERNANDO VALLEY  DIVISION

| | |
|---|---|
| In re | Case No:  1:11-11433-VK |
| POLLO WEST CORP., a California corporation, | Chapter 11 |
| Debtor and Debtor in Possession. | **EMERGENCY MOTION OF DEBTOR FOR ORDER AUTHORIZING AND APPROVING (A) USE OF CASH COLLATERAL, (B) GRANT OF ADEQUATE PROTECTION TO SECURED CREDITORS, AND (C) PAYMENTS PURSUANT TO 11 U.S.C. § 503(b)(9)** |
| | **[DECLARATION OF MICHAELA MENDELSOHN IN SUPPORT OF EMERGENCY MOTIONS FILED SEPARATELY]** |
| | **Hearing:** |
| | Date:   [TO BE SET]<br>Time:   [TO BE SET]<br>Place:  Courtroom 301<br>        21041 Burbank Blvd.<br>        Woodland Hills, CA 91367 |

Pollo West Corp. ("Pollo West") hereby moves on an emergency basis for an Order

authorizing the Debtor to use cash collateral pursuant to section 363 of the Bankruptcy Code, granting

replacement liens and other relief as adequate protection to the creditors that assert security interests

in the Debtor's cash collateral, and to make payments on prepetition amounts owed to creditors

holding administrative expense claims pursuant to section 503(b)(9) of the Bankruptcy Code (the

"Motion").  In support of this Motion, the Debtor separately filed the Declaration of Michaela Mendelsohn (the "Mendelsohn Declaration").

## EMERGENCY RELIEF IS REQUIRED

Pollo West and its affiliate Mi Pollo, Inc. ("Mi Pollo," and together with Pollo West, the "Debtors") own and operate 13 "El Pollo Loco" restaurant franchises located throughout Southern California.  The Debtors currently employ 255 employees and have annual gross revenues of approximately $16.7 million.  Because all of the Debtors' assets are encumbered by security interests asserted by a number of secured creditors, the Debtors will not be able to operate in chapter 11 unless they are authorized to use the secured creditors' cash collateral.  Among other immediate expenses, the Debtors' next payroll comes due on February 9, 2011, and the Debtors will owe approximately $86,682 on account of that payroll.  If the Debtors cannot pay the payroll due on February 9 and other essential expenses, they will be required to cease operations, which will result in immediate and irreparable harm to the estates and their creditors.

Because of the facts and circumstances surrounding the filing of the Debtors' cases, the Debtors were unable to complete the negotiations of a consensual cash collateral order with their secured creditors prior to filing their voluntary chapter 11 petitions.  The Debtors are optimistic that a consensual agreement will be entered into with the secured creditors.  However, pending completion of the negotiations with the secured creditors and finalization of a consensual agreement, the Debtors require an order from this Court authorizing the use of cash collateral on an interim basis pending a final hearing so that the Debtors can pay their immediate critical expenses pending the final hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### JURISDICTION AND VENUE

On February 3, 2011 (the "Petition Date"), the Debtors commenced cases (the "Cases") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the Bankruptcy Court for the Central District of California.  In accordance with sections 1107(a) and 1108 of the Bankruptcy

Code, the Debtors are now operating their businesses and managing their financial affairs as debtors and debtors in possession. No committee of unsecured creditors has been appointed at the time of filing this Motion.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter relates to the administration of the Debtors' bankruptcy estates (the "Estates") and is accordingly a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O). Venue of the Cases is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105, 361, 363 and 503 of the Bankruptcy Code, and Rule 4001 of the Federal Rules of Bankruptcy Procedure ("FRBP").

## II.

## STATEMENT OF FACTS

The Debtors are both subchapter S corporations co-owned by Michaela Mendelsohn and Barbara Mendelsohn. Pursuant to franchise agreements, the Debtors currently own and operate 13 "El Pollo Loco" restaurants in Southern California, with a corporate headquarters in Agoura Hills. El Pollo Loco is the nation's leading quick-service restaurant chain specializing in flame-grilled chicken. The Debtors currently have 255 employees. In 2010, the Debtors had gross revenues of approximately $16.7 million, with net store operating profits of approximately $2.2 million.

A summary of the Debtors' assets and liabilities, and the events leading to the filing of the Cases, is set forth fully in the separately filed Mendelsohn Declaration. In summary, similar to many food franchisees across the country, the Debtors began experiencing a significant slow down in business in 2008 arising from the national financial crisis and corresponding reduction of consumer spending. Faced with significant cash flow problems, the Debtors stopped making payments to their primary secured creditor, General Electric Capital Corporation ("GECC"), in August 2009 and requested that GECC negotiate a loan modification.

Extensive negotiation efforts from August 2009 through December 2010 ultimately proved unsuccessful and on December 23, 2010, GECC filed a complaint against the Debtors in the Los Angeles County Superior Court and, soon thereafter, filed an ex parte application for the appointment

of a receiver.  While the Debtors continued to offer restructuring proposals to GECC after the complaint was filed, those proposals were rejected.  On February 3, 2011, the Superior Court granted the motion and appointed a receiver.  In an effort to preserve the going concern value of the Debtors' assets for all creditors and other interested parties, the Debtors commenced these cases promptly after the appointment of the receiver.

### III.

### THE DEBTORS' NEED TO USE CASH COLLATERAL

The Debtors currently owe approximately $4.2 million to GECC, which GECC alleges is secured by substantially all of the Debtors' assets.  In addition to GECC, the Debtors also have a number of other secured creditors that assert a security interest in the Debtors' assets, including the Debtors' cash.  These secured creditors include AMRESCO Commercial Finance, LLC, with a claim of approximately $250,000, Rewards Network Establishment Services, Inc. with a claim of approximately $78,000, and the Jani Family Trust, with a claim of approximately $318,000.

As a food franchisee whose value is dependent on cash flow, the Debtors must continue to operate in order to preserve the Debtors' going concern value.  The Debtors have prepared a 13 week budget (the "Budget") that is attached to Mendelsohn Declaration as Exhibit A (and for the Court's convenience, also attached as Exhibit A hereto).  The Budget sets forth the Debtors' anticipated cash needs through May 4, 2011.  As set forth in the Budget, the Debtors require cash for the primary purposes of: (1) payroll, (2) supplies, (3) rent, and (4) royalty and advertising franchise fees.  With respect to the purchase of supplies, the Debtors utilize one primary supplier approved by the Debtors' franchisor.  The Debtors currently are negotiating with that supplier to continue the existing beneficial trade terms on a going forward basis.  As reflected in the Budget, the Debtors project that their cash balance will increase from approximately $81,086 on the Petition Date to approximately $437,735 on May 4, 2011.

Because projections are forward-looking, they can never be entirely accurate.  Thus, to protect the Debtors from fluctuations in expenses and costs, the Debtors request that they be permitted to have the flexibility to increase expenditures by up to 20% for any particular line item in the Budget,

and 15% in the aggregate.  Under this structure, the Debtors will have the flexibility to operate their business without disruption.

The Budget covers the period through May 4, 2011, and may be amended or modified during the interim period until a final hearing on the cash collateral motion can be held.  The Debtors will attempt, prior to a final hearing on the cash collateral motion, to negotiate a consensual cash collateral agreement with some or all of their secured creditors.  If and when a consensual agreement is reached, the Debtors will file a supplement to the cash collateral motion describing the terms of the consensual agreement and requesting that the Court approve the consensual agreement at the final hearing.  If for any reason a consensual agreement is not reached before the final hearing, the Debtors will file a revised cash collateral Budget and request that the Court approve the revised Budget at the final hearing.

## IV.

### THE SECURED CREDITORS ARE ADEQUATELY PROTECTED

Section 363(c)(2) of the Bankruptcy Code provides that a debtor may not use cash collateral without either the consent of the secured party or an order of the court.  Section 363(e) provides that a court may condition the debtor's use of cash collateral on the debtor providing "adequate protection" of the secured party's interest in the collateral being used.  The type of adequate protection that is appropriate in a particular case will depend on the nature of the case.  Indeed, "[a]dequate protection [is] a concept which is to be decided flexibly on the proverbial case-by-case basis." *In re O'Connor*, 808 F.2d 1393, 1396-97 (10th Cir. 1987).

A.   The Secured Creditors Are Adequately Protected Because There Is No Projected Diminution In The Value Of Their Collateral.

For the Debtors to continue their business operations, they will need to use cash collateral. The most appropriate form of adequate protection the Debtors can provide to the secured creditors is to grant the secured creditors replacement liens, to the extent of cash collateral used, on all postpetition property of the same type and character as the property to which the secured creditors' valid, perfected and unavoidable prepetition liens extended.

The grant of a replacement lien more than adequately protects the secured creditors' security interests in the Debtors' assets. As reflected in the Budget, the Debtors are profitable and the continued operation of the Debtors' business through May 4 will result in an increase in the Debtors' cash from $81,086 to $437,735. It is black-letter law that a secured creditor is adequately protected if there is no projected diminution in the collateral and the debtor is projected to operate profitably. *See, e.g., In re Pursuit Athletic Footwear, Inc.,* 193 B.R. 713 (Bankr. D. Del. 1996); *see also, In re Constable Plaza Associates, L.P.*, 125 B.R. 98 (Bankr. S.D.N.Y. 1991) (secured creditor adequately protected where cash collateral used to preserve value of assets).

    B.    <u>The Secured Creditors Are Adequately Protected By An Equity Cushion</u>.

The Debtors' assets are valued at approximately $10 million, while the amount of secured claims is less than $5 million, which is an equity cushion of 100%. It is well-established that the existence of an equity cushion alone can constitute adequate protection to secured creditors when a debtor seeks to use cash collateral. *See, e.g., In re Mellor*, 734 F.2d 1396 (9th Cir. 1984). In *Mellor*, the Ninth Circuit held that a 20% equity cushion constituted adequate protection as a matter of law. *Id.* at 1404. The Ninth Circuit indicated that a cushion of less than 20% could also constitute adequate protection and cited with approval decisions holding that equity cushions of between 10% to 20% constituted adequate protection. *Id.* (citing *In re McGowan*, 6 B.R. 241, 243 (Bankr. E.D. Pa. 1980) (holding that a 10% cushion is adequate protection); *In re Rogers Development Corp.*, 2 B.R. 679, 685 (Bankr. E.D. Va. 1980) (equity cushion of approximately 15% to 20% was adequate protection notwithstanding that the debtors had no equity in the property). *See also*, *In re Boulders on the River, Inc.*, 164 B.R. 99 (9th Cir. BAP 1994) (creditor was adequately protected with an equity cushion of 11.45%); *In re Hawaiian Pacific Industries*, 17 B.R. 670, 673 (Bankr. D. Hawaii 1982) (15% cushion constituted adequate protection)).

    C.    <u>The Secured Creditors Are Adequately Protected By Monthly Cash Payments</u>.

To further provide adequate protection for the secured creditors, the Budget provides for monthly payments to the secured creditors.[1] The payment of cash to a secured creditor can suffice

---

[1] The secured creditors that the Debtors propose to make adequate protection payments to do not include vendors that may have a security interest under their contract, but are not entitled to interest payments under their contracts.

as adequate protection.  11 U.S.C. § 361(1); *see generally, In re Deico Electronics, Inc.*, 139 B.R. 945 (9th Cir. BAP 1992).  The amount of the monthly payment is calculated as an interest payment based upon the contractual interest rate under the respective loan agreements.  While the Debtors' currently believe that the secured creditors are oversecured and the payments can be applied to interest, the payments are without prejudice to the rights of all parties to argue that the secured creditors are undersecured and the payments should be applied to principal.

## V.

### THE DEBTORS SHOULD BE AUTHORIZED TO MAKE PAYMENTS ON PREPETITION AMOUNTS OWED TO CREDITORS HOLDING ADMINISTRATIVE EXPENSE CLAIMS PURSUANT TO SECTION 503(b)(9) OF THE BANKRUPTCY CODE

As franchisees, the Debtors utilize a single supplier, MBM Corporation ("MBM"), for substantially all of their goods, including food, utensils, and various other items that are critical to the Debtors' operations.  Prepetition, MBM afforded the Debtors beneficial trade terms that allow for the Debtors to make payments to MBM for goods delivered 21 days prior.  Payments are made electronically by the Debtors to MBM approximately every 2 days.

It is critical to the Debtors' reorganization efforts that the Debtors continue to be afforded the beneficial trade terms extended by MBM prepetition.  Because of the Debtors' need for the goods shipped by MBM, the Debtors' business would collapse if MBM refused to ship.  Therefore, the Debtors currently are negotiating with MBM to ensure that MBM continues to ship and afford the Debtors the beneficial 21-day term relationship.  However, the Debtors expect that, as a condition to continuing to afford the Debtors beneficial trade terms, MBM will insist that the prepetition amounts owed to MBM must be paid in the ordinary course.  Therefore, the Budget provides for the payment of the amounts owing to MBM for goods delivered during the immediate 21 days prior to the Petition Date.  Attached hereto as Exhibit B and incorporated herein by this reference is a chart showing the amounts owing to MBM for prepetition goods delivered within 21 days of the Petition Date, and the projected dates payments are due for such goods.

While the Bankruptcy Code normally precludes the payment of prepetition claims prior to confirmation of a reorganization plan, section 503(b)(9) of the Bankruptcy Code provides that a

prepetition claim shall be allowed as an administrative expense to the extent of "the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of the debtor's business." Therefore, because substantially all of MBM's prepetition claim is based upon the delivery of goods to the Debtors within 20 days of the Petition Date, substantially all of MBM's prepetition claim is an administrative expense claim entitled to full payment. The Court has wide discretion to allow interim payments on administrative expenses. *See, e.g., In re Verco Industries*, 20 B.R. 664, 665 (BAP 9th Cir. 1982) ("The determination of when an administrative expense is to be paid is within the discretion of the trial court.").

Moreover, "courts have used their equitable power under section 105(a) of the Code to authorize the payment of pre-petition claims when such payment is deemed necessary to the survival of a debtor in a chapter 11 reorganization." *In re Just For Feet, Inc.*, 242 B.R. 821, 824 (Bankr. D. Del. 1999). Specifically, this doctrine has been used to allow for the payment of the prepetition claims of trade vendors that are essential to a debtor's operations. *Id*. at 826. Consistent with this fundamental policy, courts have authorized the trustee or debtor in possession to expend estate funds to pay prepetition claims when the payments are essential to the debtor's continued operations. *See, e.g., In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("The ability of a Bankruptcy Court to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."); *In re Gulf Air, Inc.*, 112 B.R. 152, 153 (Bankr. W.D. La. 1989) ("While pre-petition claims are normally disposed of in a plan of reorganization and in accordance with statutory priorities, there are well-established 'necessity of payment' and similar exceptions.").

As stated above, payment of the Debtors' sole supplier is critical to the survival of the Debtors' business going forward. The Debtors' business cannot operate without the continued supply of goods from MBM. If MBM is not paid for goods recently received by the Debtors prepetition, there is a strong likelihood MBM will cease doing business with the Debtors or will change the trade terms on which they do business – either outcome would result in the Debtors' demise. Therefore, the Debtors seek the authority to pay MBM such prepetition claims, as set forth in the Budget, on the

condition that MBM continues to provide the Debtors with the prepetition trade terms.  This will ensure the Debtors are able to continue operating their businesses in the ordinary course during the pendency of the Cases.

**VI.**

**THE COURT SHOULD AUTHORIZE THE INTERIM USE
OF CASH COLLATERAL PENDING A FINAL HEARING**

Pursuant to FRBP 4001(b)(2), the Court may commence a final hearing on a motion for authorization to use cash collateral no earlier than 14 days after service of the motion, and may authorize the obtaining of credit only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing. *See generally, In re Center Wholesale, Inc.*, 759 F.2d 1440, 1449 n.21 (9th Cir. 1985) (discussion of importance of emergency relief granting use of cash collateral at the commencement of a case).

The Debtors will suffer immediate and irreparable harm unless they are permitted to pay their essential expenses prior to a final hearing on the cash collateral motion.  Most significantly, the Debtors have a payroll of approximately $86,000 due on February 9, 2011 and every week thereafter.  Additionally, the Debtors pay their sole supplier approximately every two days with amounts owed ranging from approximately $90,000 to $110,000 per week.   If the Debtors are not permitted to pay their employees, supplier and other critical expenses, the Debtors will be required to cease operations, which will be extremely damaging to the Debtors' Estates.

Under the circumstances, the Debtors request that the Court set a final hearing as soon as the Court's calendar permits and authorize the Debtors to use cash collateral in accordance with the Budget on an interim basis pending the final hearing.

**VII.**

**CONCLUSION**

**WHEREFORE**, the Debtors request that the Bankruptcy Court enter an Order, substantially in the form attached as Exhibit C:

1    A.    Approving the use of cash collateral on an interim basis;

2    B.    Granting the secured creditors, to the extent necessary, replacement liens as adequate

3    protection for the use of Cash Collateral;

4    C.    Authorizing adequate payments to secured creditors;

5    D.    Authorizing the payment of prepetition amounts owed to MBM;

6    E.    Setting a final hearing to consider approval of cash collateral on a final basis; and

7    F.    Granting such other and further relief as may be appropriate under the circumstances.

8

9    Dated: February 4, 2011                PEITZMAN, WEG & KEMPINSKY LLP

10

11    By: ___/s/ David B. Shemano_____

12    David B. Shemano
      Monsi Morales

13    Proposed Counsel for the Debtor and Debtor in
      Possession

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

**Pollo West Corp., Inc. and MI Pollo, Inc.**
**Chapter 11 Rolling Cash Flow Projection**
**13 Week Rolling Cash Flow Projection**

| For Week Ending: | 02/09/11 | 02/16/11 | 02/23/11 | 03/02/11 | 03/09/11 | 03/16/11 | 03/23/11 | 03/30/11 | 04/06/11 | 04/13/11 | 04/20/11 | 04/27/11 | 05/04/11 | Cash Flow |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Chapter 11 Week Number | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 1 - 13 |
| Sales Forecast | 340,392 | 354,575 | 357,848 | 354,575 | 354,575 | 354,575 | 365,153 | 362,865 | 330,489 | 359,574 | 379,455 | 365,360 | 375,698 | 4,655,134 |
| | | | | | | | | | | | | | | |
| Beginning Cash Balance | 81,086 | 111,509 | 208,010 | 314,867 | 331,890 | 434,195 | 254,656 | 377,017 | 360,560 | 448,928 | 256,536 | 383,595 | 482,465 | 81,086 |
| | | | | | | | | | | | | | | |
| **CASH RECEIPTS TO DEBTORS:** | | | | | | | | | | | | | | |
| Store Receipts - Bank of America | 214,447 | 223,382 | 225,444 | 223,382 | 223,382 | 223,382 | 230,046 | 228,605 | 208,208 | 226,532 | 239,057 | 230,177 | 236,690 | 2,932,734 |
| Store Receipts - Credit Cards | 125,945 | 131,193 | 132,404 | 131,193 | 131,193 | 131,193 | 135,107 | 134,260 | 122,281 | 133,042 | 140,398 | 135,183 | 139,008 | 1,722,400 |
| Other | | | | | | | | | | | | | | |
| **Total Cash Inflows During the Period:** | 340,392 | 354,575 | 357,848 | 354,575 | 354,575 | 354,575 | 365,153 | 362,865 | 330,489 | 359,574 | 379,455 | 365,360 | 375,698 | 4,655,134 |
| | | | | | | | | | | | | | | |
| **CASH DISBURSEMENTS:** | | | | | | | | | | | | | | |
| **Stores Operating Expenses** | | | | | | | | | | | | | | |
| Food - MBM | (100,671) | (104,866) | (105,834) | (104,866) | (104,866) | (104,866) | (107,994) | (107,317) | (97,742) | (106,344) | (112,224) | (108,055) | (111,113) | (1,376,756) |
| Operating Supplies | (3,830) | (505) | | | | | | | | | | | | (5,345) |
| Security | (12,649) | (4,800) | (4,800) | (4,800) | (4,800) | (4,800) | (4,800) | (4,800) | (4,800) | (4,800) | (4,800) | (4,800) | (4,800) | (70,249) |
| Repairs & Replacement | (3,456) | (3,700) | (3,700) | (3,700) | (3,700) | (3,700) | (3,700) | (3,700) | (3,700) | (3,700) | (3,700) | (3,700) | (3,700) | (47,896) |
| Outside Services | (2,996) | (500) | (500) | (500) | (500) | (500) | (500) | (500) | (500) | (500) | (500) | (500) | (500) | (8,986) |
| Store Telephone | | | | | | | | | | | | | | |
| Store Utilities | (35,761) | (12,240) | (12,240) | (12,240) | (12,240) | (12,240) | (12,240) | (12,240) | (12,240) | (12,240) | (12,240) | (12,240) | (12,240) | (182,641) |
| Payroll Stores (includes taxes) | (86,682) | (84,814) | (87,702) | (84,538) | (84,538) | (84,538) | (87,000) | (86,514) | (78,795) | (85,730) | (90,470) | (87,109) | (89,574) | (1,116,063) |
| Health Insurance | (5,243) | | | | | | | | | | | | | (5,243) |
| Workers Comp Insurance | (12,500) | (2,500) | (2,500) | (2,500) | (2,500) | (2,500) | (2,500) | (2,500) | (2,500) | (2,500) | (2,500) | (2,500) | (2,500) | (42,500) |
| Store Rent-Rancho Victoria | | | | | | (9,402) | | | | (9,402) | | | | (18,803) |
| Store Rent-Kanan | | | | | | (11,797) | | | | (11,797) | | | | (23,574) |
| Store Rent-Newbury Park | | | | | | (7,935) | | | | (7,935) | | | | (15,870) |
| Store Rent-Ventura | | | | | | (12,696) | | | | (12,696) | | | | (25,392) |
| Store Rent-Van Nuys | | | | | (4,296) | | | | (4,296) | | | | (4,296) | (12,888) |
| Store Rent-Glendale | | | | | | (12,000) | | | | (12,000) | | | | (24,000) |
| Store Rent-Western | | | | | | (12,549) | | | | (12,549) | | | | (25,098) |
| Store Rent-El Segundo | | | | | | (12,575) | | | | (12,575) | | | | (25,150) |
| Store Rent-Lindero | | | | | | (9,846) | | | | (9,846) | | | | (19,692) |
| Store Rent-Thousand Oaks | | | | | | (9,178) | | | | (9,178) | | | | (18,356) |
| Store Rent-Paso Robles | | | | | (13,333) | | | | (13,333) | | | | (13,333) | (39,999) |
| Store Rent-Northridge | | | | | | (5,000) | | | | (5,000) | | | | (10,000) |
| Store Rent-Santa Maria | | | | | | (9,000) | | | | (9,000) | | | | (18,000) |
| Royalties & Advertising | | | | | | | | | | | | | | (224,187) |
| Repairs & Maintenance Compensation | (2,861) | (2,861) | (2,861) | (2,861) | | (2,861) | (2,861) | (2,861) | | (2,861) | | (2,861) | | (20,027) |
| Business Insurance - Liability | (3,574) | (4,465) | | | | (4,465) | | | | (4,465) | | | | (16,969) |
| Taxes, Licenses & Permits | (5,092) | | | | | | | | | | | | | (54,092) |
| Capital Expenditures | | | | | | | | | | | | | | (50,000) |
| **General & Administrative** | | | | | | | | | | | | | | |
| Corporate Compensation | (5,779) | (5,817) | (5,817) | (14,826) | (5,817) | (14,826) | (5,817) | (14,826) | (5,817) | (14,826) | (5,817) | (14,826) | (5,817) | (129,636) |
| Auto Expense | (656) | (656) | (656) | (656) | (656) | (656) | (656) | (656) | (656) | (656) | (656) | (656) | (656) | (8,527) |
| Catering Expenses | | | | | | | | | | | | | | |
| Legal & Professional | (5,361) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (1,500) | (4,500) | (41,361) |
| Bank Charges & Credit Card Fees | (17,875) | (4,375) | (4,375) | (4,375) | (4,375) | (4,375) | (4,375) | (4,375) | (4,375) | (4,375) | (4,375) | (4,375) | (4,375) | (70,375) |
| Office Expenses | (1,020) | (650) | (650) | (650) | (650) | (650) | (650) | (650) | (650) | (650) | (650) | (650) | (650) | (8,820) |
| Misc/Taxes/Permits | | (9,422) | | | | | (2,500) | | | | | | | (16,922) |
| Telephone | (2,930) | (500) | (500) | (500) | (500) | (500) | (500) | (500) | (500) | (500) | (500) | (500) | (500) | (6,360) |
| Repair & Maintenance - Corporate Office | (1,043) | (400) | | | | (400) | | | (400) | (400) | | | (500) | (2,243) |
| CRO Fees | | | | | | (5,000) | | (10,000) | (5,000) | | (5,000) | (10,000) | (5,000) | (30,000) |
| **Debt & Other Secured / Trust Payments** | | | | | | | | | | | | | | |
| GE Loan | | | | (27,000) | | (27,000) | | (27,000) | | (27,000) | | (27,000) | | (54,000) |
| Capmark (GMAC) - AMRESCO | | | | (2,211) | | (2,211) | | (2,211) | | (2,211) | | | (2,211) | (6,634) |
| Jani | | (1,063) | | (1,063) | | | (1,063) | | | (1,063) | (1,063) | (1,063) | | (3,168) |
| State Board of Equalization / Sales Tax | | | | (81,324) | | (40,000) | (120,077) | | | | | | (154,158) | (385,559) |
| | | | | | | | | | | | | | | |
| **Subtotal Disbursements** | (309,969) | (258,074) | (250,991) | (337,551) | (252,270) | (534,115) | (242,792) | (379,322) | (242,121) | (551,966) | (252,396) | (266,490) | (420,428) | (4,298,485) |
| | | | | | | | | | | | | | | |
| **Cash Surplus / (Deficit) Before Professional Fees** | 30,423 | 96,501 | 106,857 | 17,024 | 102,305 | (179,540) | 122,361 | (16,457) | 88,368 | (192,392) | 127,059 | 98,870 | (44,730) | 356,649 |
| | | | | | | | | | | | | | | |
| **Ending Cash Balance Before Professional Fees** | 111,509 | 208,010 | 314,867 | 331,890 | 434,195 | 254,656 | 377,017 | 360,560 | 448,928 | 256,536 | 383,595 | 482,465 | 437,735 | 437,735 |
| | | | | | | | | | | | | | | |
| **Professional Fees:** | | | | | | | | | | | | | | |
| Restructuring Expenses - Legal (A) | | | | | | | | | | | | (50,000) | (50,000) | (100,000) |
| Subtotal of Professional Fees: | | | | | | | | | | | | (50,000) | (50,000) | (100,000) |
| | | | | | | | | | | | | | | |
| **Ending Cash Balance after Professional Fees:** | | | | | | | | | | | | | 337,735 | 337,735 |

Notes:
(A) Restructuring Expenses - Legal: Will be accrued but not paid until after such expenses are approved by the court.

DRAFT - SUBJECT TO CHANGE

# EXHIBIT B

**EXHIBIT B**

**Proposed Payments to MBM for Prepetition Amounts Owed**

| Date (approx.) | Amount (approx.) |
|---|---|
| February 4, 2011 | $36,538 |
| February 7, 2011 | $30,360 |
| February 8, 2011 | $15,912 |
| February 9, 2011 | $7,325 |
| Week ending February 16, 2011 | $107,525 |
| Week ending February 23, 2011 | $105,208 |
| **Total** | **$302,868** |

i

# EXHIBIT C

**EXHIBIT C**

David B. Shemano (State Bar No. 176020)
*dshemano@pwkllp.com*
Monsi Morales (State Bar No. 235520)
*mmorales@pwkllp.com*
PEITZMAN, WEG & KEMPINSKY LLP
10100 Santa Monica Boulevard, Suite 1450
Los Angeles, CA  90067
Telephone: (310) 552-3100
Facsimile:  (310) 552-3101

Proposed Counsel for Debtor and Debtor in Possession

### UNITED STATES BANKRUPTCY COURT

### CENTRAL DISTRICT OF CALIFORNIA

### SAN FERNANDO VALLEY  DIVISION

| | |
|---|---|
| In re<br><br>POLLO WEST CORP., a California corporation,<br><br>   Debtor and Debtor in Possession. | Case No:  1:11-11433-VK<br><br>Chapter 11<br><br>**ORDER AUTHORIZING AND APPROVING (A) USE OF CASH COLLATERAL, (B) GRANT OF ADEQUATE PROTECTION TO SECURED CREDITORS, AND (C) UTHORIZING PAYMENTS PURSUANT TO 11 U.S.C. § 503(b)(9)**<br><br>**Hearing:**<br><br>Date:<br>Time:<br>Place:  Courtroom 301<br>   21041 Burbank Blvd.<br>   Woodland Hills, CA 91367 |

The Emergency Motion Of Debtor For Order Authorizing And Approving (A) Use Of Cash Collateral, (B) Grant Of Adequate Protection To Secured Creditors, And (C) Payments Pursuant To 11 U.S.C. § 503(b)(9) (the "Motion"), filed by the above-captioned debtor (the "Debtor"), came on for hearing before the Honorable Victoria Kaufman, United States Bankruptcy Judge, on February __, 2011, at __:__ __.m. (the "Hearing").  Appearances were made as reflected in the Bankruptcy Court's record. Capitalized terms used herein shall have the meaning ascribed to them in the Motion,

EXHIBIT C
Page 13

unless otherwise defined.

After consideration of the Motion and accompanying supporting papers, the arguments of counsel, the files and records in this chapter 11 case, and sufficient cause appearing, it is hereby

**ORDERED THAT:**

A.      Pursuant to section 363 of the Bankruptcy Code and subject to the terms of this Order, the Debtor is authorized to use cash collateral of the Debtor's secured creditors in accordance with the budget attached to the Motion as Exhibit A (the "Budget"); *provided, however*, that the Debtor shall be deemed to be in compliance with the Budget as long as, for any particular operating month, (1) the aggregate expenditures for all categories set forth in the Budget do not exceed the budgeted aggregate expenses by more than 15% and (2) the expenditures with respect to any particular category of expense set forth in the Budget does not exceed the amount set forth in the Budget for such category by more than 20%.

B.      As adequate protection for the Debtor's use of cash collateral, to the extent that the Debtor's use, on and after the Petition Date, of cash collateral of a secured creditor results in a diminution in the value of the cash collateral of the secured creditor, the secured creditor shall have a replacement first priority lien on and security interest in postpetition property of the same type and character as the property to which the secured creditor's valid, perfected and unavoidable prepetition lien extended, to secure the prepetition claim of the secured creditor against the Debtor.

C.      The replacement liens and security interests granted pursuant to this Order shall have the same validity, priority, enforceability and avoidability as the prepetition liens that the secured creditor had on the cash collateral and other allegedly encumbered property used by the Debtor.  The granting of such replacement liens and security interests is without prejudice to the rights, if any, of the Debtor or any other party in interest to (1) object to or seek to avoid, at any time, the prepetition claims, liens and security interests, if any, of the secured creditors, (2) seek to subordinate such replacement liens and security interests to any other liens, interests or claims that the Bankruptcy Court may authorize under any section of the Bankruptcy Code, or (3) seek to modify or expunge such replacement liens and security interests.

D.      As additional adequate protection, the Debtors are authorized to make the cash

EXHIBIT C
Page 14

payments to secured creditors set forth in the Budget; *provided, however*, the payment of the claims is without prejudice to any interested party with respect to the application of the payments and without prejudice to any interested party to avoid and recover such payments in the event it is determined that the secured creditor did not have a valid, perfected and unavoidable security interest.

E.    As additional adequate protection, the Debtor shall provide the secured creditors with such reports and information as they may reasonably request.

F.    To the extent that the adequate protection provided pursuant to this Order does not provide adequate protection of a secured creditor's asserted liens and security interests, the secured creditor shall have a superpriority claim in accordance with section 507(b) of the Bankruptcy Code.

G.    Nothing herein shall preclude any secured creditor from making any appropriate request of the Bankruptcy Court for relief, including requests for additional adequate protection or relief from the automatic stay.

H.    The Debtors are authorized to make the payments to MBM set forth in the Budget pursuant to sections 105(a), 363(b), and 503(b)(9) of the Bankruptcy Code.

I.    This Order shall be effective immediately upon entry.

### 

EXHIBIT C
Page 15

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**PEITZMAN, WEG & KEMPINSKY LLP**
**10100 Santa Monica Blvd., Suite 1450**
**Los Angeles, CA 90067**

A true and correct copy of the foregoing document described as **Emergency Motion of Debtor for Order Authorizing and Approving (A) Use of Cash of Cash Collateral, (B) Grant of Adequate Protection to Secured Creditors, and (C) Payments Pursuant to 11 U.S.C. § 503(b)(9)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **February 4, 2011**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- Susan K Seflin     sseflin@wrslawyers.com
- David B Shemano     dshemano@pwkllp.com
- United States Trustee (SV)     ustpregion16.wh.ecf@usdoj.gov

☐ Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On **February 4, 2011,** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**Served by Overnight Mail:**
Hon. Victoria S. Kaufman
United States Bankruptcy Court - Central District of California
21041 Burbank Boulevard, Suite 354
Woodland Hills, CA 91367

**Served by Overnight Mail:**
United States Trustee (SV)
21051 Warner Center Lane, Suite 115
Woodland Hills, CA 91367

☒ Service information continued on attached page

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                                                **F 9013-3.1.PROOF.SERVICE**

**III.   SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **February 4, 2011,** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

**Served by Email:**
**Counsel for GECC**
Craig Miller, Esq. – *craigmiller@dwt.com*
Mary Haas, Esq. - *maryhaas@dwt.com*

**Served by Email:**
**Amresco/Cap Mark**
Chris Peters – *cpeters@amresco.com*

**Served by Email:**
**Alston & Bird LLP**
Jason Watson - *jason.watson@alston.com*

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| **February 4, 2011** | **Daniel Marcus** | **/s/ Daniel Marcus** |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*

**F 9013-3.1.PROOF.SERVICE**

# Additional Service List

## By Overnight Mail:

| | | |
|---|---|---|
| Rewards Network Establishment Services, Inc.<br>300 S. Park Rd., Ste 300<br>Hollywood, FL 33021 | Rewards Network Establishment Services, Inc.<br>2N Riverside Plaza, Ste 950<br>Chicago, IL 60606 | Jani Family Trust dated 4/13/90<br>2603 Tuscany Way<br>Fullerton, CA 92835<br>ATTN: Gunvan & Jani and Kunce Jani, Trustees |
| Meadowbrook Meat Co., Inc.<br>2641 Meadowbrook Road<br>Rocky Mount, NC 27802 | LCA Bank Corp.<br>1375 Deer Valley Drive, Ste 218<br>Park City, UT 84060 | |

## By US Mail:

| | | |
|---|---|---|
| LCA Bank Corp.<br>PO Box 1650<br>Troy, MI 48099-1650 | | |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                                                 **F 9013-3.1.PROOF.SERVICE**